UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REGINALD SMITH,

        Plaintiff,

    v.

OFFICE OF THE ALAMEDA COUNTY
PUBLIC DEFENDER, et al.,

        Defendants.

Case No. 20-cv-08534-JST

**ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR
SUMMARY JUDGMENT**

Re: ECF Nos. 87, 118

Before the Court are motions for summary judgment filed by Plaintiff Reginald Smith,

ECF No. 87, and Defendants Office of the Alameda County Public Defender ("ACPD"), Diane

Bellas, Brendan Woods, Margo George, County of Alameda, and County of Alameda Board of

Supervisors, ECF No. 118.  The Court will deny Smith's motion for summary judgment, and grant

in part and deny in part Defendants' motion for summary judgment.

## I.    BACKGROUND

Smith alleges that he was detained at Coalinga State Hospital for 12 years without access

to a jury trial under California's Sexually Violent Predator Act ("SVPA) in violation of his

Fourteenth Amendment right to due process.

In 2008, the Alameda County District Attorney filed a petition for civil commitment under

the SVPA.  Smith was represented by Mike McCormick, an ACPD public defender, from 2008 to

2009.  Smith was then represented by several attorneys from the Alameda County Bar

Association's Court Appointed Attorneys Program ("CAAP"), with which the County contracted

to take over representation of ACPD clients when conflicts arose:  Deborah Levy, from 2009 to

2017; Stephen Avilla, from 2017 to 2018; and David Bryden, from 2018 to 2019.

In May 2019, Bryden filed a motion on Smith's behalf under *People v. Superior Court*

United States District Court
Northern District of California

1    (*Vasquez*), 27 Cal. App. 5th 36 (2018).  The *Vasquez* court had held that a 17-year pre-trial delay

2    violated an accused SVP offender's right to due process and ordered his release.  *Id.*  On

3    December 3, 2019, the Alameda County Superior Court granted Smith's *Vasquez* motion and

4    ordered his release.  ECF No. 87-1 at 22−71.

5           The parties have now filed cross-motions for summary judgment.  ECF Nos. 87, 118.

6    Smith argues he is entitled to judgment as a matter of law on his claims that his due process right

7    to a speedy SVPA trial was violated, that the County failed to adequately supervise its public

8    defense system, and that this failure was the moving force behind the constitutional violation.

9    ECF No. 87.  Defendants argue that the evidence fails to support the existence of a constitutional

10   violation or municipal liability and that Bellas and Woods are entitled to qualified immunity.  ECF

11   No. 118.

12   **II.    JURISDICTION**

13          The Court has jurisdiction under 28 U.S.C. § 1331.

14   **III.   LEGAL STANDARD**

15          Granting summary judgment is proper when a "movant shows that there is no genuine

16   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

17   Civ. P. 56(a).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is

18   'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's

19   favor."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.

20   2014).  The court must consider all evidence in the light most favorable to the non-moving

21   party.  *Isbell v. City of San Diego*, 258 F.3d 1108, 1112 (9th Cir. 2001).  "[W]hen parties submit

22   cross-motions for summary judgment, '[e]ach motion must be considered on its own

23   merits.'"  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th

24   Cir. 2001).

25          Where the party moving for summary judgment would bear the burden of proof at trial,

26   that party "has the initial burden of establishing the absence of a genuine issue of fact on each

27   issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,

28   480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

United States District Court
Northern District of California

2

1    proof at trial, that party "must either produce evidence negating an essential element of the

2    nonmoving party's claim or defense or show that the nonmoving party does not have enough

3    evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire &*

4    *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies

5    its initial burden of production, the nonmoving party must produce admissible evidence to show

6    that a genuine issue of material fact exists. *Id.* at 1102−03.  If the nonmoving party fails to make

7    this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477

8    U.S. 317, 322−23 (1986).  "Reasonable doubts as to the existence of material factual issue[s] are

9    resolved against the moving part[y] and inferences are drawn in the light most favorable to the

10   non-moving party." *Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 548 (9th Cir. 2018)

11   (quoting *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000)).

12   **IV.    DISCUSSION**

13          **A.    Request for Judicial Notice**

14          Defendants request the Court take judicial notice of clerk's minutes, a court opinion, and

15   minute orders from nine state court cases involving alleged SVPs.  ECF No. 119.  Because the

16   Court may take judicial notice of documents on file in state courts, *Harris v. County of Orange*,

17   682 F.3d 1126, 1132 (9th Cir. 2012), the Court grants Defendants' request for judicial notice.

18          **B.    Deprivation of Constitutional Right**

19          Smith's Section 1983 claims against all Defendants require a predicate deprivation of a

20   constitutional right.  Smith argues that the twelve-year delay in his commitment proceeding

21   constitutes a violation of his right to due process.

22          No binding precedent establishes the existence of a due process right to a speedy civil

23   commitment trial.  However, many courts have considered speedy trial claims raised in the context

24   of SVPA proceedings under the balancing test articulated by the Supreme Court in *Barker v.*

25   *Wingo*, 407 U.S. 514, 515 (1972). *See, e.g.*, *Yahn v. King*, No. C-13-0855 EMC (pr), 2016 WL

26   69899, at *6 (N.D. Cal. Jan. 6, 2016); *Vasquez*, 27 Cal. App. 5th at 61; *People v. Litmon*, 162 Cal.

27   App. 4th 383, 398–406 (2008); *Coleman v Mayberg*, No. C 01-3428 SBA(PR), 2005 WL

28   1876061, at *6 (N.D. Cal. Aug. 8, 2005).  Though SVPA proceedings are not criminal in nature,

United States District Court
Northern District of California

1   the *Barker* factors are appropriately applied to SVPA proceedings, which present similar due

2   process concerns.

3            To determine whether a pre-trial delay violates the accused's due process right under

4   *Barker*, courts must assess four factors: "[l]ength of delay, the reason for the delay, the

5   defendant's assertion of his right, and prejudice to the defendant."  407 U.S. at 530.  None of these

6   factors is "either a necessary or sufficient condition to the finding of a deprivation"; "they are

7   related factors and must be considered together with such other circumstances as may be

8   relevant."  *Id.* at 533.  In applying the *Barker* test, courts begin with the first factor; only if the

9   delay is 'presumptively prejudicial' need they consider the remaining factors.  *Id.* at 530.  A pre-

10  trial delay of is generally presumptively prejudicial as it approaches one year.  *Doggett v. United*

11  *States*, 505 U.S. 647, 652 n.1 (1992).

12           Where a delay is presumptively prejudicial, courts consider whether each factor weighs in

13  favor of or against the plaintiff's speedy trial right.  In general, "delay caused by the defense

14  weighs against the defendant."  *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).  "[D]elays caused by

15  defense counsel are properly attributed to the defendant, even where counsel is assigned."  *Id.* at

16  94.  "Delay resulting from a systemic 'breakdown in the public defender system,' [however,]

17  could be charged to the State."  *Id.* (internal citation omitted); *see also People v. Williams*, 58 Cal.

18  4th 197 (2013) ("[O]ur specific focus in this inquiry must be on whether a *systemic* breakdown has

19  occurred, not on whether any particular attorney or attorneys performed deficiently.").

20  Defendants' assertions of speedy trial rights "are 'entitled to strong evidentiary weight' in

21  determining whether [a defendant's] rights to a speedy trial have been denied[,] . . . [but] must be

22  viewed in the light of respondents' other conduct."  *United States v. Loud Hawk*, 474 U.S. 302,

23  314–15 (1986); *see also Barker*, 407 U.S. at 532 ("[F]ailure to assert the right will make it

24  difficult for a defendant to prove that he was denied a speedy trial.").  Finally, prejudice "should

25  be assessed in the light of the interests of defendants which the speedy trial right was designed to

26  protect . . . : (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of

27  the accused; and (iii) to limit the possibility that the defense will be impaired."  *Barker*, 407 U.S.

28  at 532.

United States District Court
Northern District of California

4

1      Smith argues that the Superior Court's order granting his release "establish[es] a due

2   process violation occurred from at least May 23, 2014[,] to April 3, 2019."  ECF No. 87 at 9.

3   Because Smith does not argue that collateral estoppel applies, however, the Court cannot grant

4   preclusive effect to the opinion of the habeas court.  In deciding these motions for summary

5   judgment, the Court considers only the evidence properly in the record in this case.  *See* Fed. R.

6   Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . genuinely disputed must support the

7   assertion by: (A) citing to particular parts of materials in the record, including depositions,

8   documents, electronically stored information, affidavits or declarations, stipulations . . . ,

9   admissions, interrogatory answers, or other materials[.]").

10      Smith is not entitled to summary judgment because there exist genuine disputes of material

11   fact as to the existence of a constitutional violation, including regarding whether and when Smith

12   asserted and waived his right to trial and the reasons for pre-trial delay, which must be resolved by

13   a trier of fact.  McCormick, Smith's first attorney, was informed that Smith wanted a speedy trial

14   in 2008, and McCormick subsequently set a trial date in 2009.  ECF No. 87-1 at 400 (memo from

15   D. Feld to McCormick dated February 8, 2008, noting that Smith "said he wanted a no time

16   waiver probable cause hearing and speedy trial"); *id.* at 414 (letter from Smith to McCormick

17   dated September 5, 2008, stating "I seek a speedy trial"); *id.* at 419 (transcript of September 12,

18   2008 court proceedings, in which McCormick requests to set trial for October 2009); *id.* at 424

19   (transcript of November 7, 2008 court proceedings, in which McCormick states that he has "six

20   other trials scheduled next year," and that "it's a much different posture for someone accused of

21   being an SVP to agree to give his lawyer time to prepare for a trial where the rest of his life is

22   potentially at stake"); ECF No. 118-1 at 84 (McCormick deposition) ("I'm pretty sure I told him

23   what [the trial date] was, and he agreed to it.").  In September 2009—before the scheduled trial—

24   the ACPD declared a conflict in Smith's case.  ECF No. 118-1 at 89–90.  CAAP attorney Levy

25   was appointed counsel for Smith, and the trial date was continued.  The parties offer conflicting

26   evidence regarding whether and how Smith asserted and waived his speedy trial right during the

27   eight years Levy represented him.  *See, e.g.*, ECF No. 118-1 at 173 (stating that, as of November

28   10, 2013, Levy did not know Smith wanted a speedy trial and that, when she offered to set the

United States District Court
Northern District of California

5

1    case for trial sooner, Smith declined); ECF No. 118-1 at 530:13–531:10 (transcript of May 23,

2    2014 court proceedings, during which Smith affirmatively waived time); ECF No. 87-1 at 1132

3    (letter from Smith to judge and prosecutor, filed April 7, 2015, stating, "I Mr. Smith wish to have

4    and demand trial and refuse to wa[i]ve no more time"); *id.* at 1137 (letter from Smith to Levy,

5    dated November 5, 2016, instructing her to "[s]top waiving time"); ECF No. 118-1 at 169 (stating

6    that, as of July 2017, when Levy transferred the case file to Avilla, Smith had waived time).  The

7    record suggests that Avilla, the CAAP attorney who took over from Levy in 2017, also believed

8    Smith had waived time.  ECF No. 118-1 at 225:8–226:1.  After *Vasquez* was decided, aware that it

9    could apply to Smith's lengthy detention, Avilla asked the Court to appoint Smith a new attorney.

10   ECF No. 118-1 at 228:1–14.

11          Because a genuine dispute exists regarding whether and when Smith asserted and waived

12   his right to a speedy trial, and such facts are material to the *Barker* analysis,[1] the Court cannot

13   grant summary judgment as to the existence of a constitutional violation.

14          **C.     *Monell* Liability**

15          Absent a predicate constitutional violation, Smith is not entitled to summary judgment on

16   his claim that the County is liable pursuant to *Monell v. Department of Social Services of City of*

17   *New York*, 436 U.S. 658, 694 (1978).  Defendants move for summary judgment on the same claim,

18   arguing that Smith cannot establish *Monell* liability.

19          To establish *Monell* liability, a plaintiff must prove "(1) that [the plaintiff] possessed a

20   constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that

21   this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the

22   policy is the moving force behind the constitutional violation."  *Dougherty v. City of Covina*, 654

23   F.3d 892, 900 (9th Cir. 2011) (alterations in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty.*

24

25   [1] Smith argues that whether he asserted his speedy trial right is irrelevant to the *Barker* analysis in
     this case because none of his attorneys ever prepared for trial, such that any trial he could have had
26   would not have been a fair one.  ECF No. 87 at 25.  Though the Supreme Court noted that none of
     these factors is necessary or sufficient to find a constitutional deprivation, "they are related factors
27   and *must* be considered together with such other circumstances as may be relevant" to the court's
     "difficult and sensitive balancing process."  *Barker*, 407 U.S. at 533 (emphasis added).  Smith's
28   assertions of the right and his attorneys' understanding of those assertions are unquestionably
     relevant to the *Barker* analysis in this case.

United States District Court
Northern District of California

*of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).  "Deliberate indifference exists when the need 'for more or different' action 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional right, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989)).  "[A] failure to supervise that is 'sufficiently inadequate' may amount to 'deliberate indifference.'"  *Dougherty v*, 654 F.3d at 900 (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989)).   "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury."  *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (emphasis omitted) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477–78 (9th Cir. 1992)).

Smith generally argues that the County failed to train or supervise ACPD and CAAP attorneys appointed to represent accused SVPs, and that this failure caused the violation of his speedy trial rights.[2]  If Smith is ultimately able to establish a constitutional violation, there is sufficient evidence from which a jury could find that the County's failure to implement any supervision, reporting, or other oversight requirements on the attorneys it hired to represent accused SVP offenders amounted to deliberate indifference.  SVP attorneys were not assigned supervisors and their work was not reviewed by others.  *See, e.g.*, ECF No. 87-1 at 809 (Bellas deposition) ("[T]he attorneys in that unit were gold standard attorneys who do not require, quote, supervision, unquote, as people commonly name that term."); *id.* at 810 ("I trusted their – their work and trusted that if any issues arose in their unit, they would bring those to my attention."); *id.* at 790 (Woods deposition) ("The unit didn't need a supervisor."); *id.* at 811 ("Their [case] files

---

[2] Defendants argue that the County cannot be held liable for "actions taken by independent court-appointed attorneys retained by third party entities where the County has merely contracted with the third-party for conflict counsel."  ECF No. 118 at 44.  Defendants misstate Smith's theory of liability:  Smith argues that the County is liable for its policy of inaction with regard to supervision, training, or oversight of its public defense system.  That CAAP attorneys are not County employees does not preclude municipal liability under *Monell*; CAAP attorneys are part of the system by which the County provides public defense services.  *See Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1131-32 (W.D. Wash. 2013) (holding that municipality was liable under *Monell*, where public defense system was composed solely of contracted attorneys, due to acts of municipal policymakers which deprived clients of effective counsel).

1  were not reviewed outside the unit."); *id.* at 768 (SVP attorneys did not receive performance

2  reviews).  The amount of time and resources SVP attorneys spent on each case was not reported or

3  monitored.  *Id.* at 775–76.  ACPD did not track SVP trial outcomes, and Bellas was not aware of

4  how long accused SVPs had been detained awaiting trial.  *Id.* at 796, 801–803.  The office also

5  had no policy regarding whether SVP cases should be adjudicated within a specific period of time.

6  *Id.* at 805.  CAAP attorneys were similarly unsupervised, and were not required to make any post-

7  assignment reports regarding the progress of the case.  ECF No. 87-1 at 779–80; *id.* at 806.

8  Though both ACPD and CAAP filed reports with the County on an ongoing basis, neither ACPD

9  nor CAAP reported information regarding the progress of SVP cases to the County.  ECF No. 87-

10  1 at 832–913, 927, 960–61, 1061–62; ECF No. 118-14 ¶ 13; ECF No. 118-2 at 93, 136.  The

11  record shows no means by which ACPD, CAAP, or the County could ensure that accused SVP

12  offenders ever went to trial at all.  *See Wilbur*, 989 F. Supp. 2d at 1132 ("[T]he monitoring

13  decisions made by the policymaking authorities of the [] ensured that any defects in the public

14  defense system would go undetected or could be easily ignored." )  And a jury could find that this

15  lack of supervision or oversight of the County's defense services caused the constitutional

16  violation "in the sense that the municipality could have prevented the violation with an appropriate

17  policy."  *Jackson*, 749 F.3d at 763.

18          Defendants' motion for summary judgment as to the *Monell* claim is denied.

19          **D.**     **Qualified Immunity**

20          "Qualified immunity shields government officials from civil damages liability unless the

21  official violated a statutory or constitutional right that was clearly established at the time of the

22  challenged conduct."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  "It is the plaintiff who

23  'bears the burden of showing that the rights allegedly violated were clearly established.'"  *Id.* at

24  1118 (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)).  "For a right to be clearly

25  established, case law must ordinarily have been earlier developed in such a concrete and factually

26  defined context to make it obvious to all reasonable government actors, in the defendant's place,

27  that what he is doing violates federal law."  *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117

28  (9th Cir. 2017).

United States District Court
Northern District of California

1    Smith argues that his right to a speedy trial in the context of SVP proceedings was clearly

2    established "not just under *Litmon*, [162 Cal. App. 4th at 383] but under all of the Supreme Court

3    precedents cited by *Litmon*."  ECF No. 122 at 22.  As discussed above, the right to a speedy trial

4    in the SVP context has not been addressed in any precedential opinions by the Supreme Court or

5    the Ninth Circuit.  None of the Supreme Court cases cited in *Litmon* concerned civil commitment

6    proceedings.  "Absent binding precedent, [courts in the Ninth Circuit] look to all available

7    decisional law, including the law of other circuits and district courts, to determine whether the

8    right was clearly established."  *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).  Assuming for

9    the sake of argument that *Litmon* constitutes available decisional law sufficient to clearly establish

10   the right, however, Smith does not cite any case that would have made it obvious to any

11   reasonable individual in Bellas or Woods' position that their lack of supervision of ACPD SVP

12   attorneys would violate that right.

13       The Court concludes that Bellas and Woods are entitled to qualified immunity.

14   Accordingly, the Court grants summary judgment to Defendants on Smith's claims against Bellas

15   and Woods.

16                                   **CONCLUSION**

17       Smith's motion for summary judgment is denied.  Defendants' motion for summary

18   judgment is granted with respect to Smith's claims against Bellas and Woods, who are entitled to

19   qualified immunity, and is denied in all other respects.

20       **IT IS SO ORDERED.**

21   Dated:  August 9, 2023

22                                                              _____
                                                                         JON S. TIGAR
23                                                              United States District Judge

24

25

26

27

28

United States District Court
Northern District of California